# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3078

_____

United States of America

*Plaintiff - Appellee*

v.

Corey Vampelt Fogg

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: June 16, 2016
Filed: September 8, 2016

_____

Before MURPHY, BRIGHT, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury found Corey Fogg guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court[1] enhanced his sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), based on his three prior

_____

[1]The Honorable Patrick J. Schiltz, United States District Court Judge for the District of Minnesota.

violent felony convictions and sentenced him to 235 months imprisonment. Fogg appeals, arguing that the district court abused its discretion in excluding evidence during his trial and that his prior conviction for attempted drive by shooting is not a violent felony under the ACCA. We affirm Fogg's conviction and sentence.

I.

On May 30, 2014 two police officers were dispatched to north Minneapolis on a report that two men had been seen with a gun. When the police approached the men, one of them fled, later identified as Corey Fogg. Officer Richard Walker chased Fogg on foot into an alley where he pulled out what appeared to be a gun and looked back toward the officer. Walker then fired two shots at Fogg, striking him in the foot and lower back. Walker testified that as Fogg fell he threw the object in his hand over a fence and into an adjacent yard. Police officers later found a handgun in that yard.

Fogg was indicted on one count of being a felon in possession of a handgun. The government filed a motion in limine seeking to exclude officer Walker's alleged use of excessive force while Fogg moved to admit evidence of Walker's alleged use of such force in previous cases. The district court allowed Fogg to present evidence that an officer who uses excessive force can face serious consequences, but any evidence attempting to show Walker's alleged use of excessive force in previous cases was excluded under Rule 403. The jury found Fogg guilty.

The presentence report concluded that Fogg was an armed career criminal due to his prior convictions for first degree manslaughter, simple robbery, and attempted drive by shooting. Fogg objected to this finding at sentencing, arguing that his attempted drive by shooting conviction under Minn. Stat. § 609.66, subd. 1e did not qualify as a violent felony under the ACCA. The district court rejected this argument,

determined that Fogg was an armed career criminal, and sentenced him to 235 months imprisonment.

## II.

Fogg argues that the district court abused its discretion by excluding evidence under Rule 403 of prior allegations of excessive force by officer Walker. We review evidentiary rulings for abuse of discretion. United States v. Condon, 720 F.3d 748, 754 (8th Cir. 2013). A district court's application of Rule 403 is entitled to great deference unless it "unfairly prevent[s] a party from proving" its case. Id. (internal quotation marks omitted). Fogg contends that this evidence was relevant to his defense theory that the officers had planted a gun in the yard to cover up their own excessive use of force. The court did not abuse its discretion in excluding this evidence because Fogg was entitled to present his defense theory.

## III.

Fogg next argues that the district court erred by concluding that his prior conviction under Minnesota's drive by shooting statute, Minn. Stat. § 609.66, subd. 1e, qualifies as a violent felony under the force clause of the ACCA. The ACCA requires a mandatory minimum fifteen year sentence if a defendant has been convicted as a felon in possession of a firearm "and has three previous convictions . . . for a violent felony." 18 U.S.C. § 924(e)(1). A prior conviction "cannot qualify as an ACCA predicate offense if its elements are broader than," the definition of a "violent felony." See Mathis v. United States, 136 S. Ct. 2243, 2251 (2016). A violent felony under the ACCA's force clause must have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

A.

Fogg first contends that the drive by shooting statute is not an ACCA violent felony because it does not criminalize the use of force "against the person of another." See 18 U.S.C. § 924(e)(2)(B)(i). We review this issue de novo. See United States v. Cole, 778 F.3d 1055, 1055 (8th Cir. 2015). In determining whether a prior conviction's elements are broader than the ACCA's definition of "a violent felony, courts should start with the formal categorical approach and look only to the fact of conviction and the statutory definition of the prior offense." See United States v. Schaffer, 818 F.3d 796, 797 (8th Cir. 2016) (internal quotation marks omitted). When a "statute criminalizes both conduct that does and does not qualify as a violent felony and the statute is divisible, we apply the modified categorical approach and may review certain judicial records to identify which section of the statute supplied the basis for a defendant's conviction." United States v. Headbird, __ F.3d __, No. 15-3718, 2016 WL 4191186, at *1 (8th Cir. Aug. 9, 2016) (internal quotation marks omitted).

We begin our analysis by determining the elements of Fogg's predicate offense of drive by shooting. A person is guilty of drive by shooting under subdivision 1e(a) if "while in or having just exited from a motor vehicle, [he] recklessly discharges a firearm at or toward another motor vehicle or a building." Minn. Stat. § 609.66, subd. 1e(a). A conviction under subdivision 1e(a) is a felony with a maximum punishment of three years imprisonment, but the maximum penalty is increased to twenty years imprisonment under subdivision 1e(b) if the defendant discharged the firearm "at or toward a person, or an occupied building or motor vehicle" Id. subd. 1e. A review of Fogg's plea hearing transcript shows that he was convicted under subdivision 1e(b) because his offense involved firing a gun at a person. See United States v. Vinton, 631 F.3d 476, 485 (8th Cir. 2011).

In State v. Hayes, 826 N.W.2d 799, 803–05 (Minn. 2013), the Minnesota Supreme Court discussed the relationship between subdivision 1e(a) and 1e(b). The court concluded that subdivision 1e(b) is not a "separate, aggravated offense" which can be charged by itself, rather "subdivision 1e(b) operates only when all of the elements in subdivision 1e(a) have been satisfied." Id. at 804–06. The Hayes court adopted the straightforward reading of Minn. Stat. § 609.66 that "subdivision 1e(b) provides for a sentence enhancement when a person, while committing a drive-by shooting [under subdivision 1e(a)], discharges a firearm at or toward an occupied building, an occupied motor vehicle, or person." 826 N.W.2d at 804.

Because subdivision 1e(a) and 1e(b) are linked to each other, we must determine whether subdivision 1e(b) supplies an additional "element" to subdivision 1e(a) in cases where the state is attempting to impose a higher fine or increase the statutory maximum. See 18 U.S.C. § 924(e)(2)(B)(I). An element of a crime is something "the prosecution must prove to sustain a conviction," meaning either something the jury must find beyond a reasonable doubt or something the defendant must admit during a guilty plea. Mathis, 136 S. Ct. at 2248 (internal quotation marks omitted). The United States Supreme Court has held that "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." Apprendi v. New Jersey, 530 U.S. 466, 494 n.19 (2000). Subdivision 1e(b) is thus considered an additional element to subdivision 1e(a) because it increases the statutory maximum punishment for a drive by shooting from three years to twenty years. See Mathis, 136 S. Ct. at 2256 (noting that "[i]f statutory alternatives carry different punishments, then under Apprendi they must be elements" under the ACCA).

The dissent argues that subdivision 1e(b) is not an element because Hayes labeled that subdivision a "sentence-enhancement provision." 826 N.W.2d at 805. The dissent misreads Hayes. The court used the phrase "sentence-enhancement

-5-

provision" only as a label to distinguish between two rival interpretations of the statute. Id. at 804–05. It went on to conclude that Hayes's conviction for first degree murder while committing a drive by shooting should be reversed because the state had not established the elements of subdivision 1e(a), even though it had established the elements of subdivision 1e(b). Id. at 804–06. The court was not considering the application of Apprendi to the Minn. Stat. § 609.66. See 826 N.W.2d at 799–808. If it had, it would have concluded that subdivision 1e(b) is an element because the Minnesota Supreme Court has stated in no uncertain terms that a sentencing enhancement that increases the statutory maximum term of imprisonment must either be "found by a jury beyond a reasonable doubt" or admitted by the defendant. State v. Dettman, 719 N.W.2d 644, 649 (Minn. 2006); see also State v. Shattuck, 704 N.W.2d 131, 153 n.4 (Minn. 2005) (citing Apprendi, 530 U.S. at 494 n.19).

Following Mathis and Hayes we conclude that subdivision 1e(b) of Minnesota's drive by shooting offense contains the following elements: 1) the defendant "was in or had just exited a motor vehicle"; 2) the defendant "recklessly discharged a firearm at or toward another motor vehicle or a building"; and 3) the defendant fired "at or toward a person, or an occupied building or motor vehicle." See Hayes, 826 N.W.2d at 806; Minn. Stat. § 609.66, subd. 1e; Minn. Jury Instruction Guides—Criminal (CRIMJIG) § 32.04 (2016). In determining whether subdivision 1e(b)'s elements are broader than the definition of a violent felony under the ACCA, we begin with the formal categorical approach. See Schaffer, 818 F.3d at 797.

It is an open question in our circuit whether a statute that criminalizes the discharge of a firearm toward an occupied building or motor vehicle qualifies as a violent felony under the force clause. See United States v. Jordan, 812 F.3d 1183, 1186–87 (8th Cir. 2016) (concluding that a statute criminalizing conduct that creates "a substantial danger of death or serious physical injury" does not qualify as a violent felony); see also United States v. Parral-Dominguez, 794 F.3d 440, 444–46 (4th Cir. 2015); United States v. Jaimes-Jaimes, 406 F.3d 845, 849–51 (7th Cir. 2005). Since

the statute potentially "criminalizes both conduct that does and does not qualify as a violent felony and the statute is divisible, we apply the modified categorical approach . . . to identify which section of the statute supplied the basis for" Fogg's conviction. See Headbird, 2016 WL 4191186, at *1 (internal quotation marks omitted).

A review of Fogg's guilty plea record reveals that he was convicted of firing "at or toward a person" under subdivision 1e(b) because he admitted that he had "pulled a gun on [his victim] and attempted to shoot him." Fogg's conviction thus involved the use of force "against the person of another." See 18 U.S.C. § 924(e)(2)(B)(i).

B.

Fogg also argues that Minnesota's drive by shooting statute does not qualify as a violent felony because it only criminalizes reckless conduct as opposed to that which is intentional or purposeful. The government claims that our review should be for plain error because Fogg did not raise this specific argument before the district court. Nevertheless, Fogg argued at sentencing that Minnesota's drive by shooting statute did not qualify as a violent felony under the force clause. At that time he explained his basis for that argument was that the statute does not criminalize the use of force "against the person of another." We review de novo his "more fully articulated argument[]" on appeal. See United States v. Ossana, 638 F.3d 895, 898 & n.2 (8th Cir. 2011).

Neither our court nor the Supreme Court has decided whether a statute criminalizing the reckless discharge of a firearm can qualify as a violent felony under the ACCA's force clause. The Supreme Court has considered this issue, however, when analyzing the similarly worded force clause in 18 U.S.C. § 921(a)(33)(A)(ii) which defines a misdemeanor crime of violence as one involving the "use . . . of physical force." See Voisine v. United States, __ S. Ct. __, No. 14-10154, slip. op.

-7-

at 4–8 (June 27, 2016). The Court held that crimes requiring a mental state of recklessness may qualify as crimes of violence under the force clause because "the word 'use' does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so." Id. at 6. Reckless conduct thus constitutes a "use" of force under the ACCA because the force clauses in 18 U.S.C. § 921(a)(33)(A)(ii) and the ACCA both define qualifying predicate offenses as those involving the "use . . . of physical force" against another. Compare 18 U.S.C. § 924(e)(2)(B)(i), with 18 U.S.C. § 921(a)(33)(A)(ii); see also United States v. Rice, 813 F.3d 704 (8th Cir. 2016) (applying the Supreme Court's analysis of 18 U.S.C. § 921(a)(33)(A)(ii) to the ACCA's force clause).

Since Fogg's prior conviction of drive by shooting required a mens rea of recklessness, Minn. Stat. § 609.66, subd. 1e(b), it qualified as a violent felony under the ACCA's force clause.

### IV.

For these reasons we affirm Fogg's conviction and sentence.

BRIGHT, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority that the district court did not abuse its discretion by excluding evidence under Fed. R. Civ. P. 403. But the majority improperly concludes recent Supreme Court decisions undercut Corey Fogg's (Fogg) arguments regarding the application of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)

sentencing enhancement. I disagree with the majority's conclusion and respectfully dissent.[2]

## ANALYSIS

In this case, we face the question of whether the state or federal courts have the ultimate authority to set forth the elements of a state-law crime when analyzing

---

[2]While the focus of this dissent is on Part III.A of the majority opinion, I also dissent from Part III.B. Earlier this year, we signaled a move to join our sister Circuits in holding only crimes with a mens rea of "intent" or "purpose" qualify as "violent felon[ies]" under the ACCA. See United States v. Garcia-Longoria, 819 F.3d 1063, 1065-67 (8th Cir. 2016) (assuming without deciding that a crime with the mens rea of "recklessness" would not categorically involve the "use, attempted use, or threatened use of physical force"); see also United States v. Boose, 739 F.3d 1185, 1187-88 (8th Cir. 2014) (holding a conviction for "reckless driving" did not categorically involve the "use, attempted use, or threatened use of physical force"); United States v. Dixon, 805 F.3d 1193, 1197 (9th Cir. 2015) (holding "the use of force must be intentional, not just reckless or negligent"); United States v. McMurray, 653 F.3d 367, 374-75 (6th Cir. 2011) ("[T]he 'use of physical force' clause of the ACCA . . . requires more than reckless conduct."); Garcia v. Gonzales, 455 F.3d 465, 469 (4th Cir. 2006) (holding "recklessness, like negligence, is not enough to support a determination that a crime" categorically involved the "use, attempted use, or threatened use of physical force"). Now, without the benefit of further briefing and acknowledging the Supreme Court has not decided the issue, the majority concludes a mens rea of "recklessness" is sufficient for a crime to qualify as a "violent felony" under the ACCA relying on the Supreme Court's recent decision in Voisine v. United States, __ U.S. __, 136 S. Ct. 2272, __ L. Ed. 2d __ (2016). We ought to refrain from deciding important and far reaching issues such as this on a plain error standard of review and without the benefit of full briefing or argument. See Lucas v. Jerusalem Cafe, LLC, 721 F.3d 927, 938-39 (8th Cir. 2013). This is especially true when the opinion relied upon expressly distinguishes itself from the statutory provision at issue. Voisine, 136 S. Ct. at 2280 n.4 (acknowledging that the interpretation of the "misdemeanor crime of domestic violence" provision can diverge from "crime of violence" or "violent felony" provisions and, therefore, the decision only resolves the requisite mens rea for "misdemeanor crime[s] of domestic violence").

proposed ACCA predicate offenses. Basic principles of federalism dictate that a state supreme court's interpretation of a state-law crime controls. Because a state supreme court's interpretation of a state-law crime controls, the majority's application of the modified-categorical approach is inappropriate[3] and we should remand for resentencing consistent with this dissenting opinion.

## A. Whether a State Supreme Court's Determination of the Elements of a State-Law Crime Controls When Assessing Proposed ACCA Predicate Offenses.

Since the founding of the United States, the principle that federal courts must accept a state supreme court's interpretation of state statutes has been "universally recognised" as necessary for the functioning of American federalism. Elmendorf v. Taylor, 23 U.S. (10 Wheat.) 152, 159-60, 6 L. Ed. 289 (1825). "[S]tate courts are the ultimate expositors of state law," Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975) (emphasis added), and " 'a fixed and received construction' of [a] statute[] of a State in its own courts" becomes "a part of the

---

[3]Interestingly, the majority does not acknowledge its use of the modified-categorical approach to determine Fogg's conviction fell under Minn. Stat. § 609.66, subd. 1e(b). Instead, the majority perfunctorily acknowledges its review of "Fogg's plea hearing transcript," without recognizing it can only apply the modified-categorical approach and look at the plea hearing transcript if section 609.66, subdivision 1e contains divisible elements. Mathis v. United States, __ U.S. __, 136 S. Ct. 2243, 2249, 2253-54, 195 L. Ed. 2d 604 (2016) ("[T]he modified[-categorical] approach serves–and serves solely–as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque."); see also United States v. Salean, 583 F.3d 1059, 1061 (8th Cir. 2009) (noting that only application of the modified-categorical approach permits courts to review "the charging document, jury instructions, plea agreement or plea hearing transcript, and comparable judicial records" (emphasis added)). As set forth in detail below, the Minnesota Supreme Court affirmatively determined section 609.66, subdivision 1e contains three, non-divisible elements and, therefore, the application of the modified-categorical approach is inappropriate.

statute[]," Murdock v. City of Memphis, 87 U.S. (20 Wall.) 590, 611, 22 L. Ed. 429 (1874) (emphasis added).

The Supreme Court affirmed this precedent's application to the analysis of state-law crimes under the ACCA. In Johnson v. United States, the Supreme Court held in no uncertain terms that, for the purpose of the ACCA, federal courts are "bound by" a state supreme court's "interpretation of state law, including its determination of the elements." 559 U.S. 133, 138, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010) (emphasis added). The Supreme Court based its holding on the principle that federal courts do not have "any authority to place a construction on a state statute different from the one rendered by the highest court of the State." Johnson v. Fankell, 520 U.S. 911, 916, 117 S. Ct. 1800, 138 L. Ed. 2d 108 (1997) (emphasis added), cited favorably in, Johnson, 559 U.S. at 138, 130 S. Ct. 1265, 176 L. Ed. 2d 1.

The Supreme Court's recent decision in Mathis v. United States, __ U.S. __, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016)–reversing this Court and narrowing the number of offenses that qualify as a "violent felony"–did not overturn the Johnson holding. In Mathis, the Supreme Court held that when "a state court decision definitively" sets forth the elements of the offense, "a sentencing judge need only follow" the ruling of the state supreme court. Id. at 2256 (emphasis added). To support this assertion, the Supreme Court cited its decision in Schad v. Arizona, 501 U.S. 624, 636, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (plurality opinion). Id. There, the Supreme Court held that in cases "involving state criminal statutes" federal courts "are not free to substitute [their] own interpretations of states statutes for those of a State's courts." Schad, 501 U.S. at 636, 111 S. Ct. 2491, 115 L. Ed. 2d 555.

In conflict with this precedent, the majority cites dicta[4] from Mathis to conclude a state supreme court's decision regarding the elements of state-law crimes does not control when analyzing proposed ACCA predicate offenses.[5] Instead, the majority concludes that, when this Court could interpret the elements differently than the state supreme court through the application of the Sixth Amendment standard set forth in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435

---

[4]"Dicta is '[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential[.]'" Passmore v. Astrue, 533 F.3d 658, 661 (8th Cir. 2008) (alterations in original) (quoting Black's Law Dictionary 1102 (8th ed. 2004)). The Supreme Court's comment regarding the use of the Apprendi standard to determine the elements of the offense was not necessary to the decision. The Supreme Court plainly stated that the determination of the elements was "easy" because "a state court decision definitively answer[ed] the question." Mathis, 136 S. Ct. at 2256, 195 L. Ed. 2d 604. Thus, the Supreme Court followed the elements as laid out by the state supreme court and never used or analyzed the Apprendi standard to decide the case. See also United States v. Headbird, ___ F.3d ___, No. 15-3718, 2016 WL 4191186, at *3 (8th Cir. Aug. 9, 2016) (considering the Minnesota Court of Appeals' analysis of the elements of a Minnesota statute, concluding "[w]e see no reason why the Minnesota Supreme Court would disagree with the analysis," and failing to conduct any analysis of the elements under Apprendi).

[5]The majority veils its failure to follow state-law precedent by hypothesizing the Minnesota Supreme Court would have made a different decision had it faced a Sixth Amendment challenge to the statute. "But a good rule of thumb for reading . . . decisions is that what they say and what they mean are one and the same." Mathis, 136 S. Ct. at 2254, 195 L. Ed. 2d 604. The Minnesota Supreme Court explicitly held Minn. Stat. § 609.66, subd. 1e is one crime that requires the government to prove three elements–none of which require the presence of a person. State v. Hayes, 826 N.W.2d 799, 806 (Minn. 2013). Basic principles of federalism dictate that we should interpret the statute accordingly and the majority's failure to do so, in effect, reverses over 200 years of precedent. See, e.g., Murdock, 87 U.S. (20 Wall.) at 611-12, 22 L. Ed. 429 (citing M'Keen v. Delancy's Lessee, 9 U.S. (5 Cranch) 22, 3 L. Ed. 25 (1809)).

(2000), the federal court's application of <u>Apprendi</u> controls.  The majority misreads <u>Mathis</u>.

After holding that the modified-categorical approach only applies to a statute with divisible <u>elements</u>, the <u>Mathis</u> court articulated ways a sentencing judge could determine whether a list of items in a state statute are elements of the offense. <u>Mathis</u>, 136 S. Ct. at 2256-57, 195 L. Ed. 2d 604.  The first method articulated, and ultimately applied, by the Supreme Court was the "easy" case where "a state court decision definitively answer[ed] the question."  <u>Id.</u> at 2256.  In this instance, according to the Supreme Court, "a sentencing judge need only follow" the ruling of the state supreme court to determine the elements of the offense.  <u>Id.</u>

To be sure, the <u>Mathis</u> court provided alternative ways of assessing whether listed items in a state statute are elements.  <u>Id.</u> at 2256-57.  The list included: (1) finding listed items are elements under <u>Apprendi</u> "[i]f statutory alternatives carry different punishments"; (2) finding listed items are not elements if merely " 'illustrative examples' "; (3) finding listed items are elements when a statute indicates they "must be charged"; or (4) looking at the record of the prior conviction to determine how the prosecution charged the defendant.  <u>Id.</u>  The Supreme Court indicated federal judges can use any of the permissible methods to determine the elements of an offense, <u>id.</u>, but did <u>not</u> direct federal judges to use these methods to "place a construction on a state statute different from the one rendered by the highest court of the State," <u>Fankell</u>, 520 U.S. at 916, 117 S. Ct. 1800, 138 L. Ed. 2d 108.

In light of this precedent, Fogg presents this Court with the "easy" case where the Minnesota Supreme Court "definitively" set forth the elements of the offense. <u>Mathis</u>, 136 S. Ct. at 2256, 195 L. Ed. 2d 604.

-13-

**B.      Whether Minnesota's Drive-By Shooting Statute Is a "Violent Felony."**

Under the ACCA, a defendant convicted of unlawful possession of a firearm is subject to a mandatory minimum sentence of fifteen-years' imprisonment if the defendant has three previous convictions for, in this case, a "violent felony." United States v. Reid, 769 F.3d 990, 993 (8th Cir. 2014) (citing 18 U.S.C. § 924(e)), cert. denied, 135 S. Ct. 2825 (2015).  A prior conviction "cannot qualify as an ACCA predicate offense if its elements are broader than," the definition of a "violent felony." Mathis, 136 S. Ct. at 2251, 195 L. Ed. 2d 604.  The phrase "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year" that "has <u>as an element</u> the use, attempted use, or threatened use of physical force <u>against the person of another</u>."  18 U.S.C. § 924(e)(2)(B)(i) (emphasis added).

To assess whether a proposed predicate offense contains elements broader than a "violent felony" under the ACCA, we apply "the 'formal categorical approach.' " United States v. Forrest, 611 F.3d 908, 909-10 (8th Cir. 2010) (quoting United States v. Reliford, 471 F.3d 913, 915-16 (8th Cir. 2006), cert denied, 127 S. Ct. 2248 (2007)).  The formal categorical approach "focuses on the statutory elements of the offense rather than the particular facts underlying the defendant's prior conviction." Reliford, 471 F.3d at 916.

If a statute is not categorically a "violent felony," we must then decide whether application of the "modified-categorical approach" is appropriate.  United States v. Headbird, __ F.3d __, No. 15-3718, 2016 WL 4191186, at *2 (8th Cir. Aug. 9, 2016). To conduct this analysis, we must assess whether the state-law crime has "<u>divisible</u>" elements.  Id. (emphasis added).  We can "consider only whether the elements satisfy the ACCA and do not apply the modified-categorical approach" if the statute does not present divisible elements.  Id.  Only in a " 'narrow range of cases' " is a statute divisible and the application of the modified-categorical approach appropriate. Descamps v. United States, __ U.S. __, 133 S. Ct. 2276, 2283-84, 186 L. Ed. 2d 438

-14-

(2013) (quoting <u>Taylor v. United States</u>, 495 U.S. 575, 602, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990)).

Here, we face the question of whether Fogg's prior conviction for drive-by shooting is a "violent felony." Minnesota's drive-by shooting statute provides:

> (a) Whoever, while in or having just exited from a motor vehicle, recklessly discharges a firearm at or toward another motor vehicle or a building is guilty of a felony and may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $6,000, or both.

> (b) Any person who violates this subdivision by firing at or toward a person, or an occupied building or motor vehicle, may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

Minn. Stat. § 609.66, subd. 1e.

Beginning with the categorical approach, a Minnesota conviction for drive-by shooting is not "categorically" a "violent felony" because Minn. Stat. § 609.66, subdivision 1e(a) plainly does not criminalize the use of force "against the person of another." <u>See</u> 18 U.S.C. § 924(e)(2)(B)(I).

The majority, however, wrongly applies the modified-categorical approach by looking at "Fogg's plea hearing transcript" to determine Fogg "was convicted under subdivision 1e(b)" without assessing whether section 609.66, subdivision 1e is divisible. In contrast to this analysis, <u>Mathis</u> requires that we must next determine whether section 609.66, subdivision 1e has "divisible" elements, and "thereby define[s] <u>multiple crimes</u>." <u>Mathis</u>, 136 S. Ct. at 2249, 195 L. Ed. 2d 604 (emphasis added); <u>see also Headbird</u>, 2016 WL 4191186, at *2. Section 609.66, subdivision 1e

only contains "divisible" elements if it "list[s] elements in the alternative." Mathis, 136 S. Ct. at 2249, 195 L. Ed. 2d 604 (emphasis added).

Applying precedent from the Minnesota Supreme Court, section 609.66, subdivision 1e is not "divisible." See id. at 2256 (concluding when a "state court decision definitively answers the question" then "a sentencing judge need only follow" the state court decision); Headbird, 2016 WL 4191186, at *3 (considering interpretations from the Minnesota Court of Appeals, concluding "[w]e see no reason why the Minnesota Supreme Court would disagree with the analysis," and failing to conduct any analysis of the elements under Apprendi). We, therefore, cannot apply the modified-categorical approach.

In State v. Hayes, the Minnesota Supreme Court articulated three elements required to convict an individual under section 609.66, subdivision 1e: "(1) [the defendant] was in or had just exited a motor vehicle; (2) [the defendant] recklessly discharged a firearm at or toward another motor vehicle or a building; and" (3) the date and county of the offense. 826 N.W.2d 799, 806 (Minn. 2013). The Supreme Court explicitly held the additional factor set forth in section 609.66, subdivision 1e(b)—"at or toward a person, or an occupied building or motor vehicle"—was not an element, but a sentencing enhancement.[6] Id. at 804-05. The Minnesota Supreme

---

[6]The majority asserts that "[t]he dissent misreads Hayes" because the Minnesota Supreme Court "used the phrase 'sentence-enhancement provision' only as a label to distinguish between two rival interpretations of the statute." Thus, says the majority, the Minnesota Supreme Court did not mean to call subdivision 1e(b) a "sentence enhancement." The majority ignores, however, that the "rival interpretations" of section 609.66, subdivision 1e(b) directly related to whether subdivision 1e(b) was a separate offense from subdivision 1e(a). Compare Hayes, 826 N.W.2d at 804 (explaining the " 'separate offense' interpretation" to be "that subdivision 1e(b) modifies the elements set forth in subdivision 1e(a) to create a separate, aggravated offense"), with id. (explaining the " 'sentence enhancement' interpretation" to be that subdivision 1e(b) "is a sentencing provision setting forth

Court went so far as to directly reject the contention that section 609.66, subdivision 1e(b) was a " 'separate offense.' " Id. at 806. Thus, based upon the elements articulated by the Minnesota Supreme Court, section 609.66, subdivision 1e does not "define multiple crimes," Mathis, 136 S. Ct. at 2249, 195 L. Ed. 2d 604, and is not divisible. Drive-by shooting is one crime consisting of three elements to obtain a conviction and none of the elements require the presence of a person.[7]

enhanced penalties for particularly serious violations of subdivision 1e(a)"). As plainly set forth in Mathis, the question of whether a statute is divisible relates to whether a statute "define[s] multiple crimes." 136 S. Ct. at 2249, 195 L. Ed. 2d 604 (emphasis added); see also Headbird, 2016 WL 4191186, at *2. The Minnesota Supreme Court concluded, based upon the competing interpretations of section 609.66, subdivision 1e(b), that the drive-by shooting statute only defines one crime. Hayes, 826 N.W.2d at 805.

[7]The majority correctly points out that the United States Supreme Court has held that "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element" for the purpose of analyzing a defendant's Sixth Amendment rights. Apprendi, 530 U.S. at 494 n.19, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (emphasis added). Under this precedent, when a sentence enhancement is "the functional equivalent of an element" a defendant has the Sixth Amendment right to have the fact submitted to a jury and proved beyond a reasonable doubt. Id. at 490. But the plain language of the ACCA does not ask this Court to look for factors that are the "functional equivalent" of elements under the Sixth Amendment. Instead, the ACCA requires courts to analyze whether a crime has "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added).

Further, in light of the Apprendi line of cases, the Minnesota Supreme Court has acknowledged that a defendant is entitled "to a jury determination of facts supporting an upward sentencing departure." State v. Dettman, 719 N.W.2d 644, 651 (Minn. 2006). Yet, Minnesota continues to distinguish between elements and aggravating sentencing factors, going so far as to require a separate waiver of both the right to a jury trial on the elements of the offense and to any facts supporting an upward sentencing departure. Id. at 650-52. Therefore, a defendant's Sixth

-17-

Therefore, the majority's application of the modified-categorical approach is improper[8] because the statute is not divisible. Since the crime of drive-by shooting encompasses a broader scope of conduct than required by 18 U.S.C. § 924(e)(2)(B)(i), Fogg's conviction is not a "violent felony." Fogg, therefore, only has two predicate offenses under the ACCA and is not subject to the ACCA's mandatory minimum sentence of fifteen-years' imprisonment.

## CONCLUSION

Over more than 200 years, federal courts have respected a state supreme court's authority to interpret state statutes. Here, the Minnesota Supreme Court definitively

---

Amendment rights are not violated by the Minnesota Supreme Court continuing to distinguish between elements and aggravating sentencing factors.

[8] I also question the majority's application of the modified-categorical approach to the listed items in subdivision 1e(b). Mathis does not permit this Court to apply the modified-categorical approach any time there is an alternatively phrased statute. See 136 S. Ct. at 2256, 195 L. Ed. 2d 604. To the contrary, we are only permitted to apply the modified-categorical approach if a statute has divisible elements. Headbird, 2016 WL 4191186, at *2. The majority fails to conduct any analysis of whether the phrase "person, or an occupied building or motor vehicle" in subdivision 1e(b) lists the elements or the means of committing drive-by shooting. See Mathis, 136 S. Ct. at 2256, 195 L. Ed. 2d 604 ("The first task for a sentencing court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means."). In fact, the majority's supposition that the elements of Fogg's crime are "1) the defendant 'was in or had just exited a motor vehicle'; 2) the defendant 'recklessly discharged a firearm at or toward another motor vehicle or a building'; and 3) the defendant fired 'at or toward a person, or an occupied building or motor vehicle' " would indicate the phrase lists means, not elements, of the crime. See id. at 2249, 2251 (holding the modified-cateogrical approach cannot be applied to a list that "specifies diverse means of satisfying a single element of a single crime"). Thus, even if subdivision 1e(b) was a separate offense, the majority's application of the modified-categorical approach does not comport with Mathis.

held the presence of a person is not required to obtain a conviction for drive-by shooting under section 609.66, subdivision 1e. Based upon the Minnesota Supreme Court's interpretation of section 609.66, subdivision 1e, a conviction for drive-by shooting is not "categorically" a "violent felony" and does not have "divisible" elements to permit the application of the modified-categorical approach. For these reasons, Fogg's drive-by shooting conviction is not an ACCA predicate offense and I would reverse and remand for resentencing consistent with this opinion.

I make one further comment. The United States Supreme Court recently reversed this Court for its overly-expansive application of the modified-categorical approach and clarified the proper circumstances for this Court to apply the modified-categorical approach. Mathis, 136 S. Ct. 2251, 195 L. Ed. 2d 604. Yet, the majority ignores the Supreme Court's dictate that we can only apply the modified-categorical approach to statutes with divisible elements. We should not need further clarification from the Supreme Court to understand the limited set of circumstances where the modified-categorical approach can be appropriately applied. See Descamps, 133 S. Ct. at 2283-84, 186 L. Ed. 2d 438 (holding that only in a " 'narrow range of cases' " is a statute divisible and the application of the modified-categorical approach appropriate (quoting Taylor, 495 U.S. at 602, 110 S. Ct. 2143, 109 L. Ed. 2d 607)); Mathis, 136 S. Ct. at 2251-52, 195 L. Ed. 2d 604 (noting that the legal principle that a sentencing judge can only look to the elements of the offense has become "a mantra" in the Supreme Court's ACCA decisions to the point of "repetition" or "downright tedium").

_____